# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

In re:                                    }
                                          }
DEBRA CARLTON,                            }        Case No. 10-40388-JJR-13
                                          }
                      Debtor.             }

_____

## MEMORANDUM OPINION

The Debtor's chapter 13 plan (Doc. 29 and herein the "Plan") came before the Court for confirmation, and although the Plan was confirmed, the Confirmation Order (Doc. 52) reserved ruling on whether confirmation should include the atypical provisions in the Plan that purported to apply to mortgage creditors (the "Mortgage Provisions"). The Standing Chapter 13 Trustee for this Division, Linda B. Gore, supported the inclusion of the Mortgage Provisions in the Plan and their confirmation. Unlike counsel for the Debtor, the Trustee filed a Brief supporting her position.

The eight-paragraph Mortgage Provisions are attached as Addendum-1 to this Opinion.[1] For the reasons stated below, the Court finds the Mortgage Provisions are not appropriate for inclusion in a chapter 13 plan, and in many instances are inconsistent with the Bankruptcy Code.[2] Accordingly, the Confirmation Order will not be supplemented to include the Mortgage Provisions as part of the Debtor's confirmed Plan.

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and

_____

[1]So they could be more easily identified when being discussed in this Opinion, the "Paragraphs" in the Mortgage Provisions were sequentially numbered by the Court, i.e. 1 – 8. Other than numbering the Paragraphs, the Mortgage Provisions were reproduced verbatim in Addendum-1.

[2]References to the "Bankruptcy Code" and "Code" are to 11 U.S.C. § 101 *et seq*. Unless the context indicates otherwise, all "Section" references are to a section, subsection, paragraph or other subdivision of the Code.

the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L); therefore, the Court has authority to enter a final order. In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, the following shall constitute the Court's findings of fact and conclusions of law.[3]

## BACKGROUND:

As mentioned above, the Mortgage Provisions in the Debtor's Plan are purported to apply to mortgage creditors: "holders and/or servicers of mortgage claims." No creditor holding or servicing a mortgage claim was specifically identified by name in the Mortgage Provisions. Nonetheless, in her schedules the Debtor disclosed that her real-property homestead was encumbered by a mortgage held by the First National Bank of Scottsboro (the "Bank"). The Plan described the Bank as the holder of a long-term secured debt in the amount of $21,200.17, and stated the prepetition arrears on that debt were $833.00. The Plan proposed that the Trustee would pay the postpetiton monthly installments that will become due on the Bank's mortgage as well as the prepetition arrears. The Plan also proposed to pay administrative expenses, including the Debtor's attorney, and a nominal dividend to unsecured creditors.

The Bank made no objection to confirmation of the Plan, with or without the Mortgage Provisions. After the Confirmation Order was entered (reserving further consideration of the Mortgage Provisions) the Bank filed two proofs of claim—one for its total mortgage debt and the

---

[3]All references to a "Bankruptcy Rule" are to a rule in the Federal Rules of Bankruptcy Procedure.

Case 10-40388-JJR13    Doc 68    Filed 09/09/10    Entered 09/09/10 16:04:54    Desc Main
Document    Page 2 of 37

other for the prepetition arrears—but still made no mention of the Mortgage Provisions.[4]

CONCLUSIONS OF LAW:

In all likelihood the Bank has not focused on the Mortgage Provisions and their potential impact on its claims. Notwithstanding the Bank's apparent lack of attention to, or interest in the Mortgage Provisions, decisions by the Supreme Court and Eleventh Circuit suggest, indeed require that bankruptcy courts, *sua sponte*, deny confirmation of chapter 13 plans that are found to be inconsistent with the Bankruptcy Code. These decisions admonished bankruptcy judges that they have an affirmative duty not to confirm plans which do not comply with the Code, even when a creditor fails to object to confirmation of an offending plan.[5]

The Eleventh Circuit in *Universal American Mortgage Co. v. Bateman (In re Bateman),* 331 F.3d 821 (11th Cir. 2003) stated that "it is the *independent* duty of the bankruptcy court to ensure that

---

[4]The Debtor filed objections (Docs. 58 and 59) to the Bank's proofs of claim, and a hearing on the objections is scheduled for September 16, 2010. A ruling on the objections may resolve what amounts the Bank should be paid under the Plan, but it will not resolve the other issues with respect to the proposed Mortgage Provisions.

[5]"Failure to comply with this self-executing requirement should prevent confirmation of the plan even if the creditor fails to object, or to appear in the proceeding at all. . . . That is because § 1325(a) instructs a bankruptcy court to confirm a plan only if the court finds, *inter alia*, that the plan complies with the 'applicable provisions' of the Code." *United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1380-81 (2010) (citations omitted).

In this Court's opinion, a bankruptcy court's consideration of whether to confirm an uncontested chapter 13 plan is not unlike the consideration that should be given to whether it is appropriate to enter a judgment by default in an adversary proceeding. In those adversaries where the defendant has failed to timely respond to the complaint, unless the plaintiff proves liability and, if applicable, damages, no judgment should be entered. Perhaps it is acceptable to relax rules of evidence, but requiring proof of liability and damages in default situations will often avoid miscarriages of justice. Likewise, when a creditor fails to object to the treatment of its claim under a proposed chapter 13 plan, if that treatment is inconsistent with the Code, confirmation should be denied. Denial of confirmation is more appropriate when the proposed treatment of a claim is out of the ordinary, particularly onerous, or will deprive the creditor of its claim and security without procedural safeguards required by the Code and Bankruptcy Rules.

3

the proposed plan comports with the requirements of the bankruptcy code." *Id*. at 828 n.6 (emphasis added). And, "every party in interest—[the debtor, the creditor], the trustee, and even the *bankruptcy judge*—should have noticed and rectified [the discrepancy in the Plan] *before* the Plan was confirmed." *Id*. at 833 (emphasis added).

In ruling on the propriety of bankruptcy courts confirming chapter 13 plans that purported to discharge student loans by plan-declaration rather than through an adversary proceeding as contemplated by the Code and Bankruptcy Rules, the Supreme Court recently held that "contrary to the [Ninth Circuit] Court of Appeals' assertion, the Code makes plain that bankruptcy courts have the authority—indeed, the *obligation*—to direct a debtor to conform his plan to the requirements of §§ 1328(a)(2) and 523(a)(8)." *Espinosa*, *130 S.Ct.* at 1381 (emphasis added).[6] After *Espinosa* there can be no doubt about a bankruptcy court's authority and responsibility to deny confirmation of an offending plan although the creditor who would suffer the consequences of confirmation fails to object:

> In other contexts, we have held that courts have the discretion, but not the obligation, to raise on their own initiative certain nonjurisdictional barriers to suit. . . . Section 1325(a) does more than codify this principle; it *requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue.

---

[6]To further underscore a bankruptcy court's independent responsibility to determine whether a proposed chapter 13 plan comports with the Code and to deny confirmation if it does not, the Supreme Court quoted from a bankruptcy court's opinion which held: "'[W]hether or not an objection is presently lodged in this case, the Court retains the authority to review this plan and deny confirmation if it fails to comply with the confirmation standards of the Code.'" 130 S.Ct. at 1381 n.15 (quoting *In re Mammel*, 221 B.R. 238, 239 (Bankr. N.D. Iowa 1998). Moreover, the Supreme Court recognized that the Ninth Circuit had been ruling "that bankruptcy courts *must* confirm a plan proposing the discharge of a student loan debt without a determination of undue hardship in an adversary proceeding unless the creditor timely raised a specific objection."*Id*. at 1380. Expressing its disapproval of those rulings, the Court stated, "This, we think, was a step too far." *Id*.

4

*Id*. at 1381 n.14 (citations omitted).  *See also, In re Booth,* 399 B.R. 316,  328 (Bankr. E.D. Ark. 2009) ("Taylor Mortgage did not object to these two provisions [in the proposed chapter 13 plan]. The court, however, is entitled to note that these provisions, on their face, are contrary to the Bankruptcy Code."); *Beskin v. Maupin (In re Maupin)*, 384 B.R. 421, 425 (Bankr. W.D. Va. 2007) ("In addition, the court has, on its own motion, raised other objections to the Debtor's plan.").

The Bankruptcy Code does not specifically address the propriety of  plan declarations that have the import of those now under scrutiny in this opinion.  Nonetheless, the starting point for this analysis will be Bankruptcy Code Sections 1322(b), 1325(a) and 1327(a).   Paragraphs 1–10 of Section 1322(b) delineate what provisions are appropriate for inclusion in a plan, and the eleventh and final paragraph of that Section is a catch-all provision that states a plan may "include any other appropriate provision *not inconsistent with this title*." Section 1322(b)(11) (emphasis added). Sections 1325(a)(1) and (3) read that "[e]xcept as provided in subsection (b), the court shall confirm a plan *if . . . the plan complies* with the provisions of this chapter and with the other applicable provisions of this title . . . [and] the plan has been proposed in good faith and not by any means forbidden by law . . . ." (emphasis added).  And finally, Section 1327(a) states that "[t]he provisions of a confirmed plan bind the debtor and each creditor . . . whether or not such creditor has objected to, has accepted, or has rejected the plan."  Pursuant to those Code Sections, if the Confirmation Order is supplemented to include the Mortgage Provisions as part of the confirmed Plan, they will be binding on the Bank and control the treatment of its secured claim during the Plan's five–year commitment period or until the case is dismissed.  Thus, it is essential that the Court examine the Mortgage Provisions and determine whether they are consistent with the Code.

*Paragraphs 1, 4 and 8—Restatement of Section 1322(b)(5)*
*and Forgiveness of Late Penalties*

5

Paragraphs 1 and 4 of the Mortgage Provisions are, to a large extent, an attempt to restate or perhaps summarize the mechanics of the treatment of mortgage claims under chapter 13—in particular treatment under Section 1322(b). Section 1322(b)(2) prohibits a chapter 13 plan from modifying "a claim secured only by a security interest in real property that is the debtor's principal residence . . ." (e.g. the Bank's claim in this case), but Section 1322(b)(5) carves out an exception. It states that "notwithstanding [Section 1322(b)(2) the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending . . . ." In other words, Section 1322(b)(5) allows a chapter 13 debtor to bifurcate payment of his home mortgage. First, the plan may provide for payment of the on-going, postpetition installments as they become due under the mortgage contract, and those installments are to be treated and applied as if there were no default and no arrears. Second, the plan may provide for the cure of the prepetition arrears by spreading their payment over a reasonable time, which is usually the life of the plan. "The effect of 1322(b)(2) and (5) is to potentially split the treatment of mortgagee's secured claim by the plan—one secured claim for the mortgage going forward and one secured claim for the arrearage—but it does not compromise the amount of the aggregate secured claim or the rights of the secured creditor to recover the arrearage." *Bateman*, 331 F.3d at 821 n.5 (citing *Nobleman v. Am. Savs. Bank,* 508 U.S. 324, 331-32 (1993)).

Confirmation of a chapter 13 plan which proposes to pay both prepetition arrears and postpetition mortgage installments temporarily usurps the amortization otherwise applicable under the mortgage contract until the arrears are fully paid, or the case is dismissed.[7] Under chapter 13,

---

[7]Outside the chapter 13 context, payments received on a mortgage debt are applied to the installments in the same order in which they become due—the oldest are paid first. Under Section 1322(b)(5), the installments that were delinquent on the petition date are, contrary to the

6

amortization of the postpetition installments will continue apart from the prepetition arrears, while

the arrears are recast over the length of the plan. Hence, at confirmation the mortgage is once again,

albeit hypothetically, "current," and it is up to the debtor to keep it that way. The foregoing benefits

the debtor because late penalties will not accrue on the on-going postpetition installments, assuming

they are *timely* paid. Contrary to Paragraph 8 of the Mortgage Provisions, if the postpetition

mortgage payments are tardy, whether they are paid through the trustee or by the debtor directly to

the mortgage creditor, there is nothing in the Code that excuses the assessment of late penalties that

are otherwise contractually allowed by the mortgage documents; filing chapter 13 is no excuse for

late payment of postpetition mortgage installments.

      This Court concludes that when a plan provides for the payment of both prepetition arrears

---

mortgage contract, put into another column and paid over the length of the plan, and the postpetition installments then begin with the installment due immediately following the last prepetition delinquent installment. For example, assume a debtor is delinquent for five installments on May 31when he files chapter 13—he owes for January through May. Under Section 1322(b)(5) those five delinquent installments may be paid separately over a period not to exceed the commitment period of the plan—three to five years. Generally, the plan will simply divide the total of the delinquent installments by the number of plan payments, and include the resulting quotient in calculating the amount of the plan payments. The postpetition mortgage installments may either be paid through the trustee or direct by the debtor to the mortgage creditor. In the example the first postpetition mortgage payment under the plan will be applied to the June mortgage installment—the five delinquent installments having been appropriately "provided for" separately in the plan. If the debtor completes the plan, the delinquency will have been fully paid at the end, and the amortization will be reinstated to that provided under the mortgage contract. *Litton v. Wachovia (In re Litton)*, 330 F.3d 636, 644(4th Cir. 2003)("[A] 'cure' merely reinstates a debt to its pre-default position, or it returns the debtor and creditor to their respective positions before the default."). Thus, if the case is dismissed before the plan payments are completed or before the prepetition delinquency is otherwise paid, the mortgage creditor may recalculate the application of all payments received during the case (both the prepetition delinquency and postpetition maintenance installments) in accordance with the original mortgage contract, as if the bankruptcy had not intervened. *Maupin,* 384 B.R. at 428 ("If the case is dismissed or converted, then the order confirming the plan, and the plan, will no longer be binding on the creditor.").

and on-going postpetition mortgage payments—as does the Debtor's Plan in this case—an attempt in the plan to recapitulate in detail the manner in which the payments are to be applied adds nothing but clutter, creates ambiguity and uncertainty with regard to whether something more or less than what the Code allows was intended, and otherwise enhances the opportunity for mischief and fosters litigation. Historically, at least in this Court, the treatment of mortgage claims in chapter 13 cases, and the application of plan payments to those claims, have worked as intended under Section 1322(b)(5) without attempts at fine-tuning by way of excess plan verbiage of uncertain consequences. This Court adopts the conclusions reached by the court in *In re Maupin*, *supra*, with regard to crowding chapter 13 plans with extraordinary provisions that include questionable interpretations of the Code: "[I]f Paragraph 11L is an accurate statement of law, then it is unnecessary. If it is not an accurate statement of law, then it violates the implied statutory prohibition against including any provision that is not consistent with the Bankruptcy Code. *See* 11 U.S.C. § 1322(b)(11). . . . As such it must be deleted from the plan before it may be confirmed."

Thus, assuming Paragraphs 1 and 4 are accurate reiterations of the Code, and especially how Section 1322(b)(5) works in practice, they are unnecessary, or if they are not accurate, they are inconsistent with the Code and violate Section 1322(b)(11)—in either case they do not belong in the Plan. As mentioned earlier, Paragraph 8 is an improper attempt to prospectively condone tardy payment of postpetition mortgage installments and likewise should not be confirmed as part of the Plan.[8]

---

[8]Paragraph 8 conflicts with the last sentence in Paragraph 1. While Paragraph 8 is an inappropriate attempt to excuse the accrual of late charges otherwise contractually due when on-going maintenance installments are tardy, Paragraph 1 correctly states that such installments "made in a *timely* manner under the terms of the note shall be applied and credited without penalty." (emphasis added). This inconsistency underscores the systemic problems that will be

Paragraph 2 requires the mortgage creditor to, *inter alia*, perform an annual escrow analysis consistent with the Real Estate Settlement Procedures Act ("RESPA").[9] Because the Debtor's mortgage is a federally related mortgage loan, the Bank is already required by RESPA to provide the Debtor with an annual escrow analysis and notice of any shortage of funds in her escrow account. 12 U.S.C. § 2609(b), (c).[10] Mortgage borrowers who are also bankruptcy debtors may resort to remedies provided under RESPA. *See, e.g., Payne v. Mortgage Electronic Registration Systems, Inc. (In re Payne),* 387 B.R. 614 (Bankr. D. Kan. 2008). And although reaffirming RESPA's continuing applicability is surplusage, and hence inappropriate for inclusion in the Plan, the more critical problem with Paragraphs 2, 5 and 6, is their imposition of responsibilities on the mortgage creditor that go beyond those required by RESPA and the mortgage contract.

As a mortgage borrower, and now as a debtor in a chapter 13 case, the Debtor had, and continues to have certain duties and responsibilities. Before filing for relief she had the responsibility to timely pay the Bank the installments due on her mortgage loan; that responsibility continues, although she is now expected to pay the Tustee who will disburse payments to the Bank. The Debtor had the prepetition responsibility to maintain insurance coverage on the mortgaged

_____

encountered if debtors and their counsel are given a free hand at orchestrating chapter 13 plans to their liking.

[9] 12 U.S.C. § 2601 *et seq.*

[10] A federally related mortgage loan is defined in 12 U.S.C. § 2602(1) as a mortgage loan made by a lender whose deposits are insured by an agency of the Federal Government or by a lender regulated by such an agency. It is safe to assume the Bank's deposits are insured by the FDIC.

9

property and pay the premiums, and if there was an escrow account, make sufficient deposits into escrow to pay the premiums when they become due; her responsibility was the same with respect to taxes on the mortgaged property. Those responsibilities continue postpetition. If there is a change in the amount of insurance premiums or taxes, and the mortgage provides for an escrow account, or the Debtor's monthly installment changes due to an adjustable interest rate, the amount of the postpetition mortgage installments will be adjusted accordingly. Once the appropriate notice is given by the Bank to the Debtor, she has the responsibility to make the adjusted payment or suffer the consequences. However, under Paragraphs 2, 5 and 6, the Debtor would impose a duty on the Bank that goes beyond those required by the mortgage contract or RESPA. These Paragraphs would required the Bank to file—presumably with the Court and at the Bank's expense—the RESPA escrow report and notice of any change in the monthly mortgage installments. Why should this become the duty of the Bank? Why should not the Debtor and her attorney be responsible for seeking a modification of her Plan under Code Section 1329(a)(1) if payments change during the course of the Plan? Mortgage creditors usually employ counsel to file matters on their behalf in courts—does the Debtor propose to reimburse the Bank for its expenses associated with filing the escrow reports and notices of payment changes?

In a case before the Bankruptcy Court for the East District of Arkansas a mortgage creditor objected to plan provisions—not unlike those proposed by the Debtor in this case—which purported to impose a duty on the creditor to notify the trustee and the debtor's attorney of changes in mortgage payments. The court sustained the objection, and gave the following reasons for doing so:

> The only notice required of these changes [in payments] is as set forth in the [mortgage] documents. The Mortgage limits the notice requirement to one address. If the debtor is informed, then the debtor must so inform the trustee. It is inappropriate, and nowhere statutorily sanctioned, to put this additional burden on

10

the mortgage company. Presumably, the debtor, as the party most interested in retaining his home, will be attuned to any changes in his interest rate, taxes, or insurance, and he must bear the responsibility of informing the trustee and, if necessary, amending his plan to provide for the adjusted amount.

*Booth*, 399 B.R. at 327-28. *See also Maupin*, 384 B.R. at 429 (Rejecting plan provision requiring expanded notice of changes in mortgage payments, noting, "[i]f a creditor does not inform the payor, whether it be the debtor or the trustee, then the creditor cannot expect to be paid the increased (or decreased) amount. The creditor will have an incentive to give such notice even without the provision in the plan.").

If the Mortgage Provisions are confirmed as part of the Plan, the Bank will be required to keep up with the Debtor's business even if the Bank fully complies with its noticing requirements under RESPA and the mortgage contract.[11] This Court agrees with the *Booth* and *Maupin* courts, *supra*, that there is no statutory or other authority for imposing the burden of notifying the trustee of adjustments in mortgage payments.

RESPA requires a mortgage creditor to respond in writing within 60 days after receipt of a written request from a borrower or her agent (e.g. attorney) for information regarding the borrower's account. 12 U.S.C. § 2605(e). Thus, if mortgage payments change due to an increase in escrow deposits or interest, or because reimbursable expenses are incurred by the mortgage creditor, or if the debtor simply wants to confirm there are no outstanding late penalties, advances, expenses, interest or other sums of which she is unaware, RESPA provides the means for discovery and

---

[11]Following discharge, the Debtor will once again be required to keep up with her mortgage-related responsibilities—both monetary and non-monetary. Is it really a good idea for the Debtor to go five years without being responsible for, and directly involved in, the day-to-day matters associated with her home mortgage and after discharge suddenly be expected to assume control without a hitch?

11

requires an explanation from the mortgage creditor. If the debtor is not satisfied with the explanation, she may challenge the amounts claimed by the mortgage creditor by filing an adversary proceeding or contested matter and conducting discovery; however, there is no authority for imposing on the mortgage creditor the obligation to file periodic notices, tantamount to proofs of claim, to preserve its claims, whether those claims are pre- or postpetition.[12] Most if not all of the notice requirements in the Mortgage Provisions could be eliminated if the Debtor, with the assistance of her attorney, took advantage of RESPA and made periodic inquiries (e.g. annually) with the Bank regarding the status of the Debtor's mortgage account, including whether there are any outstanding late penalties, expenses and advances not being paid under the Plan. And such an inquiry would be particularly appropriate as the Debtor approaches the completion of her Plan.

*Paragraph 2—Shortfalls in Plan Payments*

At the end of Paragraph 2 is the following statement: "The monthly mortgage payment is a pass through payment that shall be made at a higher priority than other secured fixed monthly payments." The inclusion of this statement confirms the Mortgage Provisions were not tailor–made for the Debtor's Plan because her Plan does not propose to pay any secured claim other than the Bank's claim.[13] Regardless, while this statement may be ambiguous or not applicable in the context

---

[12]*See* discussion regarding Paragraph 4 *infra*.

[13]In fact, the Mortgage Provisions are not applicable to the Debtor's circumstances in other respects. It appears from the attachments to the Bank's proofs of claim that the Debtor does not maintain an escrow account in connection with her mortgage, and the interest rate on the underlying mortgage loan is fixed and not subject to periodic adjustment. Using a one-size-fits-all approach, counsel for the Debtor has included the same Mortgage Provisions in other debtors' plans. Thus, the Court is addressing all aspects of the Mortgage Provisions in this opinion whether or not they will impact the Debtor's Plan or the Bank's mortgage claim, and will refer to this opinion in ruling on the inclusion of the Mortgage Provisions in other chapter 13 plans.

12

of the Debtor's Plan, the Court's interpretation is that if plan payments are insufficient to pay all secured creditors, non-mortgage secured creditors suffer the shortfall.  Such a provision violates at least three requirements mandated by Section 1325(a)(5) with respect to the treatment of secured claims: If another secured creditor's payments are redirected to a mortgage creditor when plan payments are insufficient to fully service the mortgage claim, the non-mortgage secured creditor's payments will no longer (i) have a value of not less than the allowed amount of its secured claim, or (ii) be in equal monthly amounts, or (iii) be in an amount sufficient to provide adequate protection—violations of Sections 1325(a)(5)(B)(ii), (iii)(I) and (II), respectively.  There is nothing in the Code that allows a plan to be flexible with regard to what is paid to secured creditors when, due to the debtor's failure to pay the full amount of her periodic plan payments, there is not enough money to go around, and thus one secured creditor—the mortgage creditor in this instance—is preferred over others. While the Code may allow a separate classification for each secured claim, robbing one to pay the other to cover a shortfall caused by the debtor's default is unfair discrimination against the slighted creditors, and is inconsistent with chapter 13 of the Code, in particular Section 1325(a)(5). *See also* Section 1322(a)(3); *In re Currin*, No. 89-12130-B, 1991 WL 91095, at *2 (Bankr. W.D. Tenn. May 30, 1991) (Houston, J.) (noting that making partial plan payments to the Trustee, who uses the funds to pay only ongoing mortgage payments, results in a *de facto* modification of the plan).

### *Paragraph 3—Protective Advances*

Paragraph 3 attempts to accomplish two things.  First it requires a mortgage creditor to file a notice with the court if it makes a protective advance, and as examples mentions insurance and

13

taxes which the debtor fails to pay during the term of the plan. In other words, protective advances are just that—debts that become due because of the debtor's postpetition default that the mortgage creditor is forced to cover to protect its interest in the mortgaged property, usually arising when the debtor fails to maintain and pay insurance or pay taxes—which can have severe consequences for the mortgage creditor's interest in the mortgaged property. Under the Mortgage Provisions, protective advances are relegated to administrative claims which are to be paid pro rata with priority claims.

Claims for protective advances are relegated, not elevated, because priority claims by definition are unsecured claims.[14] *State of Alabama Dept. of Human Resources v. Boler (In re Boler),* 2008 WL 205579, at *2 n.2 (M.D.Ala.) ("A priority claim is an 'unsecured claim that, under bankruptcy law, must be paid before other unsecured claims.'"), quoting *Black's Law Dictionary,* 265 8th ed. 2004; *see also In re Aldridge,* 335 B.R. 889, 892 (Bankr. S.D. Ala. 2005) ("By definition priority claims are a type of unsecured claims."); Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy* § 99.1 (4th ed. rev. May 17, 2010) *available at* www.Ch13online.com ("With two exceptions [not applicable here] the claims entitled to priority and full payment in a Chapter 13 case are always *unsecured* claims."). Section 507 describes the claims entitled to priority status, and in

---

[14]Although Section 1322(a)(2) requires full payment of administrative claims, such claims, unlike fully secured claims, do not generally accrue interest. *Cf.* Section 506(b). Thus at a minimum, treating protective advances as administrative claims rather than secured claims will deprive the mortgage creditor of interest. An example may better demonstrate the significance of this subtle reclassification: If the debtor fails to pay insurance premiums early in the plan and the mortgage creditor advances the money to pay the premium to protect its interest in the mortgaged property, that advance, according to the Mortgage Provisions, will be paid over the remainder of the plan term, which in some cases could be almost 5 years. The value of the claim for reimbursement of the advance is significantly reduced if it may be repaid over approximately 5 years without interest—arguably a violation of Section 1325(a)(5)(ii).

14

each instance defines the claim with the adjective "unsecured" or as a particular type claim that would generally be unsecured (e.g. attorney's fees, wages, DUI tort claims). Virtually all mortgages, including that attached to the Bank's proofs of claim, provide that the mortgagor's obligation to reimburse the mortgage creditor for protective advances are secured by the mortgage and accrue interest; if confirmed, Paragraph 3 will wrongfully take away that security and the attendant interest.[15]

Moreover—and perhaps most critical—Paragraph 3 implicitly excuses a postpetition default and forces the mortgage creditor to finance the debtor's reimbursement obligation over the remaining life of the plan. For example, failure to insure mortgaged property or pay taxes is usually grounds for stay relief due to lack of adequate protection. Section 362(d)(1). Under Paragraph 3, a debtor's postpetition failure to pay insurance premiums or taxes effectively shifts the burden of payment to the mortgage creditor—unless the creditor is willing to expose its investment in the mortgaged property to casualty loss without insurance, being sold for taxes, or incurring tax penalties superior to the mortgage. Under Paragraph 3 when the mortgage creditor is forced to make a protective advance due to the debtor's default, the plan payments are nonchalantly increased, thus amortizing the mortgage creditor's advance, without interest, over the remaining term of the plan. Nothing in

---

[15]The Bank's mortgage provides: "That if mortgagor defaults in any of the provisions of paragraphs numbered 2 [insurance], 5 [taxes], or 6 hereof then the mortgagee . . . may pay such taxes . . . and pay for such insurance . . . and that all amounts so advanced by mortgagee . . . shall be secured hereby and shall bear interest from the date of payment at the highest rate allowable."

As mentioned early in this Opinion, debtor's counsel did not file a brief or memorandum supporting the Mortgage Provisions. If he had, he might have argued that Paragraph 3 was not intended to deprive a mortgage creditor of its security or interest for protective advances, but only specifies the manner in which the advance will be paid under the Plan. But the mortgage creditor, Trustee and Court should not have to guess what was intended. The ambiguity in what was intended by Paragraph 3, without more, is sufficient grounds to strike it from the Plan.

15

the Code authorizes such an imposition on secured creditors.

*Paragraph 4—Arrears and Proofs of Claim*

The Eleventh Circuit has held that secured creditors are not required to file proofs of claim to preserve their security interests in property of the bankruptcy estate:

> An unsecured creditor is required to file a proof [of] claim for its claim to be allowed, but filing is not mandatory for a secured creditor. *See* Fed. R. Bankr. P. 3002(a). In fact, a secured creditor need not do anything during the course of the bankruptcy proceeding because it will always be able to look to the underlying collateral to satisfy its lien. *In re Folendore*, 862 F.2d 1537, 1539 (11th Cir. 1989) . . . .

*Bateman*, 331 F.3d at 827. *See also Cen-Pen Corp. v. Hanson,* 58 F.3d 89, 94 (4th Cir. 1995) ("Nor does the combination of Cen-Pen's [specious] treatment as an unsecured creditor plus its failure to file a proof of claim avoid its liens."). Bankruptcy Rule 3002(a) requires that "[a]n *unsecured* creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed . . . ." Secured creditors are conspicuously absent from that requirement.

Paragraph 4 of the Mortgage Provisions contemplates arrears will be paid by the trustee and "shall consist of amounts listed on the allowed proof of claim."[16] But what are the consequences of a mortgage creditor not filing a proof of claim? Under Paragraph 7 of the Mortgage Provisions (discussed in more detail *infra*) any portion of a mortgage creditor's claims not included in the Plan, even if otherwise owing and secured, will be summarily (and wrongfully) extinguished when the Debtor receives her discharge at the end of the case. Thus, contrary to Eleventh Circuit precedent, the combination of Paragraphs 4 and 7 would force a mortgage creditor to file a proof of claim, and its failure to do so would result in the forfeiture of the creditor's prepetition arrears.

---

[16]The Bank's proofs of claim, filed after confirmation but before the bar date, are in amounts substantially greater than the amounts stated in the Debtor's Plan. The Debtor has filed objections to the Bank's claims. See n.4 *supra.*

16

## *Paragraph 5—Postpetition Fees and Costs*

Paragraph 5 requires mortgage creditors to file an annual notice of all postpetition fees, costs and other charges assessed under the mortgage documents ("expenses"). Failure to file the notice of expenses is deemed a waiver of any claim for reimbursement. If a notice is timely filed, and no objection is lodged, the expenses are deemed allowed as an administrative expense and paid pro rata with priority claims. In other words, under the Mortgage Provisions the postpetition expenses are treated like protective advances discussed earlier, except they are deemed waived if they are not included in an annual notice filed with the court. And like protective advances, postpetition expenses are not treated as secured claims even though virtually all mortgages, including that of the Bank, provide that the debtor's obligation to reimburse the mortgage creditor for such expenses is secured by the mortgage and accrues interest.[17] The annual notice is tantamount to a proof of claim, and requiring a secured creditor to file such a notice or forfeit its right to reimbursement is contrary to the Eleventh Circuit's holding in *Bateman, supra*.

## *Paragraph 7—Discharge and Section 1322(b)(5)*

Under Section 1328(a) when a debtor completes all the payments under the plan (and satisfies certain other requirements) the court will grant a discharge of all debts provided for by the plan or disallowed under Section 502. Paragraph 7 of the Mortgage Provisions attempts to expand the ramifications of the discharge. That Paragraph states that "an order granting a discharge in this case shall be a determination [i.e. declaration] that all prepetition and postpetition defaults with respect to the debtors' [sic] mortgage have been cured, and the debtors' [sic] mortgage account is deemed

---

[17]The Bank's mortgage provides that it secures payment of "all attorney's fees and the performance of the covenants and agreements herein made."

17

[i.e. declared] current and reinstated . . . ."  An order granting a discharge at the end of a chapter 13 case cannot be used as a substitute for a declaratory judgment.  Bankruptcy Rule 7001 provides in clause (2) that a proceeding to determine the validity, priority, or extent of a lien or other interest in property is an adversary proceeding; in clause (6) that a proceeding to determine the dischargeability of a debt is an adversary proceeding; and in clause (9) that a proceeding to obtain a declaratory judgment relating to any of the foregoing, including clauses (2) and (6), is an adversary proceeding. Converting the discharge order into a decree that finds the mortgage is current and all defaults have been cured is an attempt to furtively obtain a declaratory judgment holding all mortgage-default claims, whether pre- or postpetition, have been discharged and the mortgage lien no longer secures such claims, regardless of whether they were actually paid.  Such relief cannot be granted under the Bankruptcy Rules except through an adversary proceeding with its attendant procedural safeguards. Moreover, so extending the reach of the discharge order requires this Court to render a blanket advisory opinion regarding matters that have not been litigated.  "This the Court cannot do." *Maupin*, 421 B.R. at 429 (disallowing plan provision that caused confirmation to constitute a finding that debtor and trustee did not waive certain pre- and post petition causes of action).

Section 1322(b)(2) prohibits the modification of "a claim secured only by a security interest in real property that is the debtor's principal residence . . . ."  Some courts have held that requiring a mortgage creditor to give notice of postpetition advances and expenses is not necessarily an improper modification prohibited under Section 1322(b)(2).  S*ee e.g.*, *In re Watson*, 384 B.R. 697 (Bankr. D. Del. 2008); *In re Collins*, No. 07-30454, 2007 WL 2116416 (Bankr. E.D. Tenn. July 19, 2007).  However, the decisions of these courts do not address what is this Court's primary objection to the Mortgage Provisions: discharge of secured claims by plan declaration.  If failure of a mortgage

18

creditor to jump through hoops imposed, not by the Bankruptcy Code and Bankruptcy Rules, but by

mandates in the plan results in an *ipso facto* forfeiture of a portion of a creditor's secured debt, then

there can be no doubt that an impermissible modification of the residential mortgage has occurred.

This is exactly the result that was rejected by the Eleventh Circuit in *Bateman*, *supra*.

In *Bateman* the chapter 13 debtor's amended plan significantly understated the prepetition

arrearage owing on the debtor's mortgage, and described the arrearage as "disputed." The plan was

confirmed without objection by the mortgage creditor. The creditor timely filed a proof of claim for

the full amount of the arrearage, but no objection was filed to the claim until the trustee notified the

debtor, who then filed an objection approximately 14 months after confirmation. The mortgage

creditor responded by seeking dismissal of the debtor's case. The bankruptcy court refused to

dismiss the case, and sustained the debtor's objection. The court gave *res judicata* effect to the

confirmed plan, and held that the amount of arrearage stated in the plan, albeit understated, was

binding on the mortgage creditor. *Bateman*, 331 F.3d at 822-23. On appeal, the district court

affirmed the bankruptcy court. The creditor then appealed to the Eleventh Circuit, which held that

although the creditor could not collaterally attack the confirmed plan after it failed to object to

confirmation or appeal the confirmation order, it reversed the two lower courts' rulings with regard

to the arrearage, and in so doing stated:

> We also hold that a secured creditor's claim for mortgage arrearage survives the
> confirmed plan to the extent it is not satisfied in full by payments under the plan, or
> otherwise satisfied under the terms [of] § 1325(a)(5), because to permit otherwise
> would deny the effect of 11 U.S.C. § 1322(b)(2), which, in effect, prohibits
> modifications of secured claims for mortgages on a debtor's principal residence.
> . . .
>
> Thus, [the mortgage creditor] seeks both to avoid the *res judicata* effect of the Plan's
> confirmation as to its claim and to unravel the bankruptcy altogether as invalidly
> confirmed. . . . We deny both of [the mortgage creditor's] requests, but nevertheless

19

hold that [its] secured claim for the mortgage arrearage remains intact.

. . .

However, to the extent that [the mortgage creditor] had any rights to act against [the debtor] pursuant to the terms of the mortgage, it retains those rights despite the terms of the Plan.

*Id*. at 822, 824-25, 835. The court further concluded:

Based upon the language of § 1322(b), which prohibits the modification of a mortgagee's interest, we will not extend the reasoning in *In re Tepper* [279 B.R. 859 (Bankr. M.D. Fla. 2002)] to enable discharge resulting from an explicitly prohibited modification.

. . . .

We hold that although the parties are bound to the terms of the Plan, as confirmed, [the mortgage creditor's] secured claim for arrearage survives the Plan and it retains its rights under the mortgage until [its] claim is satisfied in full. If the satisfaction is not forthcoming, after the automatic stay is lifted, [the mortgage creditor] will be entitled to act in accordance with the rights as provided in the mortgage to satisfy its claim.

*Id.* at 834 n.12.

If, as in *Bateman*, a confirmed plan that understated the amount due on a residential mortgage would not extinguish the shortfall and the mortgage lien that secured it, even if the plan were eventually completed and the debtor discharged, then the Mortgage Provisions in this case, especially Paragraph 7, must suffer the same fate and have no business in a plan.[18]

---

[18]The Code and Bankruptcy Rules do not leave a debtor in limbo. If the mortgage creditor files a proof of claim, which they usually do, and the debtor wishes to challenge the claim, then Code Section 502 and Bankruptcy Rule 3007 provide a means and remedy. If no claim is filed by the creditor and the debtor is confident of the amount of the outstanding arrears (e.g. information taken from the creditor's demand for payment or foreclosure notice), a proof of claim may be filed by the debtor on behalf of the creditor pursuant to Bankruptcy Rule 3004. From a practical standpoint, a mortgage creditor will almost always confirm with debtor's counsel the accuracy of a debtor-filed claim or follow-up with its own amended claim; but if not, debtor's counsel may follow-up with a RESPA inquiry to confirm the accuracy of the debtor-filed claim. When all else fails, the debtor may file an adversary proceeding under Bankruptcy Rule 7001 to determine the validity, priority, or extent of the mortgage creditor's lien and the

20

Section 524(i), added to the Code as part of the much maligned Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, reads as follows:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

And Section 524(a)(2) provides:

> A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

The Trustee argues Section 524(i) authorizes plan provisions that mandate a specific manner in which payments are to be credited to claims of mortgage creditors, and apparently some courts have agreed with the Trustee's position. *See e.g., In re Booth*, 399 B.R. 316 (Bankr. E.D. Ark. 2009) (concluding that Section 524 is express recognition that a plan may permissibly outline a "manner" for addressing payments); *In re Emery*, 387 B.R. 721 (Bankr. E.D. La. 2007) (determining that Section 524 allows a debtor to direct the application of plan payments).

Nonetheless, this Court is not prepared to join the avant-garde and adopt the Trustee's and the authorties' she cited interpretation of Section 524(i). Section 524(i) provides that a creditor's willful misapplication of payments received during the term of the plan constitutes a violation of the

---

correct amount of the secured debt. If a debtor must resort to an adversary proceeding to confirm the accuracy of his Rule 3004 claim due to an uncooperative mortgage creditor, the court should consider sanctions against the creditor under Section 105.

discharge injunction imposed under Section 524(a)(2); that injunction does not arise until after the plan is completed and the debtor receives a discharge. According to its plain meaning, Section 544(i) provides a post-discharge remedy for debtors, but has no pre-petition application. *In re Patton,* No. 08-23038, 2008 WL 5130096, at *2 (Bankr. E.D. Wis. Nov. 19, 2008) (" I am not persuaded that [§ 524(i)] authorizes the proposed plan language at issue; it merely provides debtors with a post-discharge remedy in the event the creditor willfully fails to credit payments received under a confirmed plan.").[19] And even if Section 524(i) did have pre-discharge application it would not authorize plan provisions having such broad ramifications as the Mortgage Provisions proposed by the Debtor in this case.

The Trustee emphasized that the Mortgage Provisions are similar to the "best practices" endorsed by the National Association of Chapter Thirteen Trustees ("NACTT"). She stressed that the NACTT's best practices include provisions that were unanimously approved by a committee composed of chapter 13 trustees, mortgage servicers, mortgagees and creditors' counselors. A copy of NACTT's best practices was attached to the Trustee's brief, and they can be found in Addendum-2 to this Opinion. Many of the same issues covered by the Mortgage Provisions are addressed in

---

[19]For example, Section 524(i) would prohibit a creditor holding both secured and unsecured claims from crediting payments to unsecured claims that were specified in the plan for application to a secured claim; or more apropos, from applying payments earmarked for postpetition mortgage payments to prepetition arrears. The critical point is that the accounting to determine whether Section 524(i) has been violated comes at the end of the chapter 13 plan after all plan payments have been made, not during the case. If a debtor discovers during the chapter 13 case a creditor's internal accounting is not crediting payments as specified in the plan, Section 524(i) provides no immediate remedy. Indeed no remedy is needed until completion of the plan, at which time the creditor must "true-up" its accounting to reflect that payments were applied in compliance with the plan. If the debtor's case is dismissed before she successfully completes her plan, then her creditors may, in retrospect, credit payments in accordance with the parties' contract and ignore the intervening bankruptcy. *See* n.7 *supra.*

NACTT's best practices, but there is one major and conspicuous difference: The NACTT's best practices do not summarily penalize mortgage creditors with forfeiture of their claims or security for non-compliance.  It is doubtful that mortgage servicers and mortgagees would have considered such provisions as "best practices" if failure to comply resulted in summary loss of their claims.

### *Lack of Uniformity—Costs of Compliance*

Probably the most compelling argument (if the Bank had chosen to argue) against confirmation of the Mortgage Provisions is the countless variations among similar provisions that inevitably will be scripted into chapter 13 plans by a bevy of debtors' attorneys in different bankruptcy courts throughout the country.  Each attorney will attempt to rectify what he or she views as the most egregious conduct of the mortgage industry that imperils chapter 13 debtors.[20]  Some will want notices of postpetition advances and expenses filed within 30 days of when they were made, and with the consequences of noncompliance being total forgiveness of the advance or expense; some will require an officer of the mortgage creditor appear and testify regarding the authenticity of advances or expenses, and their reasonableness; some will impose monetary penalties for non-compliance; some will treat non-compliance as an intentional stay violation; some will want an option to postpone repayment of escrow shortages, advances and expenses until the final maturity of the mortgage loan, or the option to pay them over time after discharge.  The potential is unlimited.

----

[20]During August 2010, a total of 902 new chapter 13 cases were filed in the Northern District of Alabama.  In light of high unemployment in northern Alabama, the number of chapter 13 filings is not expected to improve until unemployment decreases.  It would be virtually impossible for the judges in this District to make a meaningful review and analysis of each proposed plan and confirm its consistency with the Code if debtors are given the liberty to include in their plans assorted directives of the same ilk as the Mortgage Provisions.  If allowed, there would be no reason to limit such provisions to mortgage claims; claims for automobile and student loans, taxes, and domestic support obligations, to name a few, would be next.

23

Provisions allowed by the Northern District of Alabama may be different from those permitted by the Southern and Middle Districts of Alabama, or the Southern District of New York, or the District of Alaska. Potentially, and at considerable costs, mortgage creditors will be required to comply with a hodgepodge of nonconforming instructions, controls, directives and restrictions put into chapter 13 plans by imaginative debtors' attorneys throughout the 50 States, the District of Columbia, Puerto Rico and beyond.

This Court is aware of anecdotal evidence of abuses practiced by mortgage creditors against chapter 13 debtors; however, there are a miniscule number of adversary proceedings filed in this Court in which debtors allege violations by mortgage creditors of the automatic stay or the discharge injunction. Admittedly, there are more objections by debtors and trustees directed at the legitimacy and reasonableness of postpetition advances and expenses charged by mortgage creditors, but most are settled or withdrawn after discovery; and, at least in this Court, their numbers do not support a finding of systemic abuse by the mortgage industry. Perhaps abuses are more prevalent in other districts, but the solution is not an assortment of plan-imposed controls that will vary from district to district, and perhaps from judge to judge within the same district.

An amendment to Bankruptcy Rule 3001 and a new Bankruptcy Rule 3002.1, both of which address many of same notice-issues covered by the Mortgage Provision, were published for comment and approved for adoption by the Standing Committee on Rules of Practice and Procedure.[21] It

_____

[21]Drafts of the proposed amended Bankruptcy Rule 3001 and new Bankruptcy Rule 3002.1 are set forth in Addendum-3 to this Opinion. The text of these amended and new Bankruptcy Rules was taken from the Memorandum dated May 27, 2010 from the Advisory Committee on Bankruptcy Rules to the Standing Committee Rules of Practice and Procedure of the Judicial Conference of the United States.

Amendments to Bankruptcy Code that, to a lesser extent, would address some of the same issues covered by the pending amended and new Bankruptcy Rules were proposed in the House

24

appears that approval by the Judicial Conference and adoption by the Supreme Court are likely, if not imminent.[22]  Additionally, there are proposed new forms for mortgage creditors: Form 10 (Attachment A), Mortgage Proof of Claim Attachment; Form 10 (Supplement 1), Notice of Payment Change; and Form 10 (Supplement 2), Notice of Postpetition Fees, Expenses and Charges.  These new forms will implement many of the mortgage reporting requirements that will be imposed by the new and amended Bankruptcy Rules.  If the foregoing are adopted as expected, mortgage creditors will have one set of uniform guidelines and forms for their claims regardless of which court their mortgagors' cases may be pending.  The probable adoption of the amended and new rules and forms further persuades this Court that ad hoc plan provisions that attempt to regulate mortgage creditors and deprive them of secured claims without procedural safeguards provided by the Code and Bankruptcy Rules are not plan-appropriate under Section 1322(b)(11) and violate the prohibition in Section 1322(b)(2) against modifications to mortgages encumbering debtors' principal residences.

Accordingly, pursuant to Bankruptcy Rule 9021 a separate Order will be entered in conformity with this Opinion denying approval and confirmation of the Mortgage Provisions.

Dated:  September 9, 2010

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

and Senate.  S. 61, 896; H.R. 200, 225, 1106; 111th Cong. (2009).  In light of the pending new and amended Bankruptcy Rules it is unlikely the proposed Code amendments will be enacted.

[22]It is also unlikely that Congress will veto the amended and new Bankruptcy Rules from going into effect.

ADDENDUM - 1

1. Postpetition Mortgage Payments. Payments received by holders and/or servicers of mortgage claims for ongoing postpetition installment payments shall be applied and credited to the debtors' mortgage account as if the account were current and no prepetition default existed on the petition date in the order of priority specified in the note and security agreement and applicable nonbankruptcy law. Postpetition installment payments made in a timely manner under the terms of the note shall be applied and credited without penalty.

2. Duty of Mortgage Servicer to file Notice of Payment Change due to escrow analysis: The Mortgage Servicer shall perform an annual escrow analysis and shall file yearly a Notice of Payment Change with a copy of the escrow analysis showing the taxes and insurance paid for the prior year consistent with 12 U.S.C. §2609(c)(2)(A) and (B). Absent objection, the fixed monthly payment is adjusted in accordance with the Notice provided and the Trustee shall file a Notice of the increase or decrease in the debtor's plan payment due to the change in the fixed payment. Absent objection, the debtor's payment becomes the amount in the Trustee's Notice. The monthly mortgage payment is a pass through payment that shall be made at a higher priority than other secured fixed monthly payments.

3. Duty of Mortgage Servicer to file Notice of Protective Advances: The Mortgage Servicer shall timely file a Notice with the Court if the servicer advances funds under the terms of the mortgage as a protective advance e.g. forced placed insurance or advance of taxes due to non payment. Absent objection, those amounts advanced are deemed allowed as an administrative expense and paid through the estate as an allowed claim pro rata with Priority Claims. The Trustee shall file a Notice of the increase in the debtor's plan payment resulting from this additional administrative expense. Absent objection, the debtor's payment becomes the amount in the Trustee's Notice.

4. Prepetition Arrearages. Payments disbursed by the trustee to holders and/or servicers of mortgage claims shall be applied and credited only to the prepetition arrearages necessary to cure the default, which shall consist of amounts listed on the allowed proof of claim and authorized by the note and security agreement and applicable nonbankruptcy law. Holders and/or servicers of mortgage claims shall deem the prepetition arrearages as contractually current upon confirmation of the plan.

5. Duty of Mortgage Service to file Notice of Post Petition Fees and Costs Assessed pursuant to the Mortgage. The Mortgage Servicer shall file yearly a Notice of all Post-Petition fees, costs of collection, and all other contract charges assessed under the mortgage document, including attorney's fees. The notice shall be filed annually, beginning within 30 days of the date one year after entry of the initial plan confirmation order, and each year thereafter during the pendency of the case, with a final notice filed within 30 days of the filing of the trustee's final account under Bankruptcy Rule 5009. Absent objection, those fees and costs would be deemed allowed as an administrative expense and paid through the estate as an allowed claim pro rata with Priority Claims. The failure of a holder and/or servicer to timely file such notice for any given year of the case's administration shall be deemed a waiver for all purposes of any claim for fees, expenses or charges accrued during that year, and the holder and/or servicer shall be prohibited

from collecting or assessing such fees, expenses or charges for that year against the debtors or debtors' account during the case or after entry of the order granting a discharge. All costs of collection, including attorneys' fees, post-petition costs and other contract charges that accrue under the mortgage that arise during the pendency of this case shall be claimed by the mortgage holder pursuant to the provisions of this section, and if not so claimed, shall be waived. The Trustee shall file a notice of the increase in the debtor's plan payments resulting from these additional charges. Absent objection, the debtor's payment becomes the amount in the Trustee's notice.

6. Duty of Mortgage Servicer to file Notice of Payment Change due to interest and ARM changes: The Mortgage Servicer shall timely file a Notice of Payment Change that contains the calculation of the new payment, the new interest rate and the date of the payment change. Absent objection, the Trustee shall adjust the fixed monthly payment in accordance with this Notice and shall file a Notice of the new debtor payment resulting from the change in this fixed monthly payment. Absent objection, the debtor's payment becomes the amount in the Trustee Notice.

7. Mortgage Current upon Discharge. Unless the Court orders otherwise, an order granting a discharge in this case shall be a determination that all prepetition and postpetition defaults with respect to the debtors' mortgage have been cured, and that the debtors' mortgage account is deemed current and reinstated on the original payment schedule under the note and security agreement as if no default had ever occurred.

8. No late charges, fees or other monetary amounts shall be assessed based on the timing of any payments made by the Trustee under the provisions of the Plan, unless allowed by Order of the Court.

## ADDENDUM - 2

### BEST PRACTICES FOR TRUSTEES and MORTGAGE SERVICERS IN CHAPTER 13
### AS ENDORSED BY NACTT. NACBA. CMIS AND AFN

If servicers/mortgagees include a flat fee cost in the proof of claim for review of the Chapter 13 plan prior to confirmation and for the preparation of the proof of claim, it should be reasonable and fairly reflect the attorney's fee incurred.

If Servicers/mortgagees include attorney fees for pursuing relief from stay, such fees should be clearly identified as well as how such fees are to be paid in any agreed order resolving a Motion for Relief from Stay or any other matter before the court.

Servicers/mortgagees should analyze the loan for escrow changes upon the filing of a bankruptcy case and each year thereafter. A copy of the escrow analysis should be provided to the debtor and filed with the Bankruptcy Court by the servicers/mortgagee or their representative each year.

Servicers/mortgagees should not include any pre petition cost or fees or pre petition negative escrow in any post petition escrow analysis. These amounts should be included in the prepetition claim amount unless the payment of such fee or cost was actually made by the servicer.

Servicers/mortgagees should attach a statement to a formal notice of payment change outlining all post petition contractual costs and fees not previously approved by the court and due and owing since the prior escrow analysis or date of filing whichever is later. This statement need not contain fees, costs, charges and expenses that are awarded or approved by the Bankruptcy Court order. In absence of any objection or challenge to such fees, the trustee should take appropriate steps to cause such fees to be paid as part of Debtor's Chapter 13 plan.

Servicers/mortgagees should supply and maintain a contact for debtor's counsel and trustee's for the purpose of restructuring, modifying a mortgage, or other loss mitigation assistance including a short sale or deed in lieu of foreclosure. The contact should be an individual or group with the ability to implement or assess with objective criteria a loss mitigation modification after filing of a chapter 13 petition with the goal of keeping the Debtor in the house and the success of the bankruptcy.

Mortgage servicers should provide a dedicated phone line and contact for Chapter 13 Trustee inquiry use only.

Mortgage servicers should monitor post petition payments. If the mortgage is paid post petition current then the servicers/mortgagees should not seek to recover late fees. No late fees should be recovered or demanded for systemic delay but should be limited to actual debtor default.

Pre petition payments should be tracked as applied to pre petition arrears, post petition payments should be tracked as applied to post petition ongoing mortgage payments

Servicers/mortgagees should file a notice and reason of any payment change with the court and provide same to the Debtor.

Servicers are required to file a notice of any protective advances made in reference to a mortgage claim, such as non escrow insurance premiums or taxes. Such notice should be provided to the debtors and filed with the court.

Servicers/mortgagees should clearly identify if the loan is an escrowed or escrowed loan and break out the monthly payment consisting of Principal, Interest, Escrow and PMI components.

Servicers/mortgagees should identify nontraditional mortgage loans in their proof of claims. Loans with options should identify on the proof of claim the type of loan as well as the various contractual payment options available during the bankruptcy to the borrower/Debtor.

Trustees should initiate a communication with mortgage servicers when questions arise in a review of a post petition escrow analysis.

United States Trustees and Trustee Education Network should modify the requirements of the financial management class regarding adjustable rate mortgages, the calculation of mortgage escrows and, in particular, the potential of increased mortgage payments resulting from increased taxes, interest rate hikes and/or mortgage premiums.

**Trustee** voucher checks, check stubs or vouchers provided with any other form of payment contain the following information, except to the extent prevented from doing so by local rule:

1.   The Name of the debtor and case number

2.   The trustee's claim   number
3.   The mortgagee's account number (to the extent provided on the proof of claim)
4.   If the mortgagee account number is not available, e.g. not contained on the proof of claim, at least one other piece of identifying information e.g., property address
5.   The amount of the payment
6.   Whether the payment is for the ongoing mortgage payment or the mortgage arrearage
7.   If for the mortgage arrears, the balance owing on the arrears claim after application of the payment
8.   If the trustee has set up a separate claim for post-petition charges of the mortgagee, that the voucher clearly identify that fact
9.   If any portion of the payment on arrears is intended to pay interest on the mortgage arrears, the amount of that interest portion of the payment
10.  If the mortgage is to be paid off during the bankruptcy under the confirmed plan through payments by the trustee, e.g., a total debt claim, the portions of each payment which represent principal and interest, and the balance owing on the claim after application of the payment

There is a movement among servicers to redact all but the last four numbers of the mortgagors' loan numbers on proofs of claim, because those claims are public records. While mortgage servicers in general want as much information as possible on the vouchers, the mortgage servicers on the Working Group felt that if the voucher had the bankruptcy case number, the name of the debtor and the redacted loan number from their filed claim, they would be able to post the payment. Using the account number to the extent provided in a filed proof of claim also insures that trustees are not disclosing information on their website that is not already disclosed in the public record.

**Voucher Narrative re Payments:** The Working Group places particular emphasis on No. 6 above. The voucher should identify if a payment is for the regular mortgage payment or for the mortgage arrearage in consistent language. While Chapter 13 trustee disbursement applications focus on the claims to be paid, mortgage servicer computer systems focus on their mortgagor account number. Posting of receipts, whether or not the account is in bankruptcy, is typically handled by a Cash Processing group or department of the mortgage servicer. Those departments focus on the account number on the voucher and the narrative on the voucher for that account number to determine if the payment is for the regular mortgage payment or the mortgage arrearage.

**Mortgage Arrearage Claims:** When filing their initial proofs of claim, mortgage servicers should state their mortgage arrearage up to the date of the filing date of the bankruptcy petition, unless the plan or trustee indicates otherwise, or local rule provides otherwise. The Chapter 13 Trustee will use the mortgage arrearage claim to set up the arrearage balance on the claim, which in turn will show up as the "balance" on the voucher check, absent objection to the claim.

ADDENDUM - 3

## Rule 3001.  Proof of Claim

1                                    * * * * *

2                    (c) <u>SUPPORTING INFORMATION.</u>

3                            <u>(1)</u> *Claim Based on a Writing.*  When a claim,

4        or an interest in property of the debtor securing the claim, is

5        based on a writing, the original or a duplicate shall be filed

6        with the proof of claim.  If the writing has been lost or

7        destroyed, a statement of the circumstances of the loss or

8        destruction shall be filed with the claim.

9                            <u>(2)</u>  *Additional Requirements in an Individual*

10       *Debtor Case; Sanctions for Failure to Comply.*  In a case in

11       which the debtor is an individual:

12            (A) If, in addition to its principal amount,

13   a claim includes interest, fees, expenses, or other charges

14   incurred before the petition was filed, an itemized statement

15   of the interest, fees, expenses, or charges shall be filed with

16   the proof of claim.

17            (B) If a security interest is claimed in the

18   debtor's property, a statement of the amount necessary to cure

19   any default as of the date of the petition shall be filed with the

20   proof of claim.

21            (C) If a security interest is claimed in

22   property that is the debtor's principal residence, the attachment

23   prescribed by the appropriate Official Form shall be filed with

24   the proof of claim. If an escrow account has been established in

25   connection with the claim, an escrow account statement prepared

26   as of the date the petition was filed and in a form consistent with

27   applicable nonbankruptcy law shall be filed with the attachment

28   to the proof of claim.

## 20  FEDERAL RULES OF BANKRUPTCY PROCEDURE

29              (D)  If the holder of a claim fails to provide

30      any information required by this subdivision (c), the court

31      may, after notice and hearing, take either or both of the

32      following actions:

33              (i)  preclude  the  holder  from

34      presenting the omitted information, in any form, as evidence

35      in any contested matter or adversary proceeding in the case,

36      unless the court determines that the failure was substantially

37      justified or is harmless; or

38              (ii) award other appropriate relief,

39      including reasonable expenses and attorney's fees caused by

40      the failure.

41                          * * * * *

**Rule 3002.1. Notice Relating to Claims Secured by Security Interest in the Debtor's Principal Residence**

1    (a) IN GENERAL. This rule applies in a chapter 13 case

2    to claims that are (1) secured by a security interest in the debtor's

3    principal residence, and (2) provided for under § 1322(b)(5) of the

4    Code in the debtor's plan.

5    (b) NOTICE OF PAYMENT CHANGES. The holder of

6    the claim shall file and serve on the debtor, debtor's counsel, and

7    the trustee a notice of any change in the payment amount, including

8    any change that results from an interest rate or escrow account

9    adjustment, no later than 21 days before a payment in the new

10   amount is due.

11   (c) NOTICE OF FEES, EXPENSES, AND CHARGES.

12   The holder of the claim shall file and serve on the debtor, debtor's

13   counsel, and the trustee a notice itemizing all fees, expenses, or

14   charges (i) that were incurred in connection with the claim after the

15   bankruptcy case was filed, and (ii) that the holder asserts are

16   recoverable against the debtor or against the debtor's principal

17   residence. The notice shall be served within 180 days after the date

18   on which the fees, expenses, or charges are incurred.

19   (d) FORM AND CONTENT. A notice filed and served

20   under subdivision (b) or (c) of this rule shall be prepared as

Page -42-

Case 10-40388-JJR13   Doc 68   Filed 09/09/10   Entered 09/09/10 16:04:54   Desc Main
Document   Page 34 of 37

21    prescribed by the appropriate Official Form, and filed as a

22    supplement to the holder's proof of claim.  The notice is not

23    subject to Rule 3001(f).

24        (e)  DETERMINATION OF FEES, EXPENSES, OR

25    CHARGES.  On motion of the debtor or trustee filed within one

26    year after service of a notice under subdivision (c) of this rule, the

27    court shall, after notice and hearing, determine whether payment of

28    any claimed fee, expense, or charge is required by the underlying

29    agreement and applicable nonbankruptcy law to cure a default or

30    maintain payments in accordance with § 1322(b)(5) of the Code.

31        (f)  NOTICE OF FINAL CURE PAYMENT.  Within 30

32    days after the debtor completes all payments under the plan, the

33    trustee shall file and serve on the holder of the claim, the debtor,

34    and debtor's counsel a notice stating that the debtor has paid in full

35    the amount required to cure any default on the claim.  The notice

36    shall also inform the holder of its obligation to file and serve a

37    response under subdivision (g).  If the debtor contends that final

38    cure payment has been made and all plan payments have been

39    completed, and the trustee does not timely file and serve the notice

40    required by this subdivision, the debtor may file and serve the

41    notice.

Case 10-40388-JJR13    Doc 68    Filed 09/09/10    Entered 09/09/10 16:04:54    Desc Main
Document         Page 35 of 37

42          (g)  RESPONSE TO NOTICE OF FINAL CURE

43     PAYMENT.  Within 21 days after service of the notice under

44     subdivision (f) of this rule, the holder shall file and serve on the

45     debtor, debtor's counsel, and the trustee a statement indicating (1)

46     whether it agrees that the debtor has paid in full the amount

47     required to cure the default on the claim, and (2) whether the

48     debtor is otherwise current on all payments consistent with §

49     1322(b)(5) of the Code.  The statement shall itemize the required

50     cure or postpetition amounts, if any, that the holder contends

51     remain unpaid as of the date of the statement.  The statement shall

52     be filed as a supplement to the holder's proof of claim and is not

53     subject to Rule 3001(f).

54          (h)  DETERMINATION OF FINAL CURE AND

55     PAYMENT.  On motion of the debtor or trustee filed within 21

56     days after service of the statement under subdivision (g) of this

57     rule, the court shall, after notice and hearing, determine whether

58     the debtor has cured the default and paid all required postpetition

59     amounts,

60          (i)  FAILURE TO NOTIFY.  If the holder of a claim fails to

61     provide any information as required by subdivision (b), (c), or (g)

62     of this rule, the court may, after notice and hearing, take either or

63     both of the following actions:

Case 10-40388-JJR13   Doc 68   Filed 09/09/10   Entered 09/09/10 16:04:54   Desc Main
Document    Page 36 of 37

64              (1) preclude the holder from presenting the omitted

65     information, in any form, as evidence in any contested matter or

66     adversary proceeding in the case, unless the court determines that

67     the failure was substantially justified or is harmless; or

68              (2) award other appropriate relief, including

69     reasonable expenses and attorney's fees caused by the failure.